UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SMITH,<br><br>    Plaintiff,<br><br>  v.<br><br>D. LETOURNEAU et al.,<br><br>    Defendants. | No.  2:11-cv-2808-TLN-EFB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a former state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Defendants LeTourneau and Silva move for summary judgment.[1] ECF No. 47. For the reasons provided below, defendants' motion must be granted.

**I.   Background**

This action proceeds on the original and verified complaint. ECF No. 1 ("Compl."). Plaintiff alleges that he has been diagnosed with sun sensitivity, and that sun exposure causes him to pass out. *Id.* § IV. He claims he was assigned to work with the sanitation yard crew, which primarily involves work outside in the sun. *Id.*

/////

---

[1] Defendants noticed their motion for hearing. However, the court has determined that oral argument would not be of material assistance and the hearing date is vacated. *See* E.D. Cal. L.R. 230(g).

1

1    On August 2, 2010, plaintiff met with defendant LeTourneau, the correctional officer in
2  charge of the sanitation yard crew. *Id.*; ECF No. 47-4 ("LeTourneau Decl.") ¶ 1. Plaintiff told
3  LeTourneau that he had a medical condition that would prevent him from working outside.
4  Compl. § IV; LeTourneau Decl. ¶ 7. LeTourneau requested that plaintiff provide him with
5  documentation from his health care provider. LeTourneau Decl. ¶ 7. While LeTourneau waited
6  for plaintiff to obtain the requested documentation, he did not require plaintiff to work and
7  provided plaintiff with "S-time," which excused plaintiff's absences from work. *Id.* ¶¶ 4, 7.

8    On August 12, 2010, plaintiff was approved for a medical chrono. ECF No. 47-6
9  ("Shadday Decl.") ¶ 6. Dr. Shadday, who noted plaintiff's complaints of dizziness, issued the
10 chrono, which stated, "no prolong[ed] exposure to sun or heat >90 degree[s]." *Id.*, Exs. A & B.
11 The chrono was intended to prohibit prolonged work in the sun and heat when the outside
12 temperature exceeded ninety degrees. *Id.* ¶ 7. That same day, plaintiff provided LeTourneau
13 with a copy of the chrono. Compl. § IV; LeTourneau Decl. ¶ 8.

14   On August 16, 2010, plaintiff met with defendant Silva, his correctional counselor.
15 Compl. § IV; ECF No. 47-5 ("Silva Decl.") ¶ 5. Silva explained to plaintiff that in order to
16 unassign him from work, he required a request from plaintiff's supervisor (LeTourneau), or a
17 copy of plaintiff's medical chrono. Compl. § IV; Silva Decl. ¶ 5. Silva was not aware of any risk
18 of injury or harm to plaintiff because plaintiff was being excused from work at the time. Silva
19 Decl. ¶ 5.

20   LeTourneau apparently waited until September 19, 2010, to prepare and submit a request
21 to defendant Silva for plaintiff to be unassigned from the sanitation yard crew. LeTourneau Decl.
22 ¶ 9; ECF No. 47-3, Ex. 1 at 4. However, LeTourneau continued to provide plaintiff with "S" time
23 for July, August, September, and October, 2010. LeTourneau Decl. ¶ 11. Plaintiff was not
24 required to work during those months. *Id.*

25   As of November 2010, the outside temperature at the prison had not exceeded 90 degrees
26 since October 16, 2010. *Id.* ¶ 12, Ex. B. LeTourneau determined that the temperature was not in
27 danger of exceeding 90 degrees, and did not believe that plaintiff's chrono would prohibit a
28 /////

2

1  three-hour shift in such conditions.  *Id.* ¶ 12.  On November 8, 2010, LeTourneau told plaintiff
2  that he would have to begin reporting to his shift.  *Id.* ¶ 13.
3       Defendant Silva, who had not met with plaintiff since August 16, was not aware that
4  LeTourneau had ordered plaintiff back to work or that plaintiff was no longer receiving "S" time.
5  Silva Decl. ¶¶ 7-8.
6       On November 17, 2010, plaintiff reported to the sanitation yard crew for work.  Compl.
7  § IV.  The high temperature for the day was 70 degrees.  ECF No. 47-3, Ex. 5 at 9.  During his
8  shift, plaintiff began feeling ill, light-headed, and nauseous.  Compl. § IV; ECF No. 47-3, Ex. 2 at
9  5.  While on his way to get water, plaintiff passed out and claims to have hit his head.  Compl.
10 § IV; ECF No. 47-3, Ex. 2 at 6.
11      Plaintiff was treated that day by Dr. Rallos, who noted that plaintiff was not injured and
12 determined that plaintiff's symptoms were consistent with heat exhaustion.  ECF No. 47-8
13 ("Rallos Decl.") ¶¶ 9, 12.   Heat exhaustion is a mild form of heat-related illness that can develop
14 after several days of exposure to high temperatures and inadequate or unbalanced replacement of
15 fluids.  ECF No. 47-9, ¶ 5.  Dr. Rallos did not interpret plaintiff's chrono as a prohibition of all
16 contact with the sun.  Rallos Decl. ¶ 14.  Nor did he believe that the chrono was meant to prevent
17 plaintiff from working in November when the outside temperature was below 90 degrees.  *Id.*
18 According to Dr. Rallos, inmates with identified heat sensitivity are generally excused from
19 outdoor work during the summer months, ending in October.  *Id.* ¶ 13.
20      Plaintiff claims that defendants were deliberately indifferent to his medical needs in
21 violation of the Eighth Amendment by failing to unassign him from the sanitation yard crew,
22 causing him "serious pain."  Compl. § IV.  Defendants Silva and LeTourneau now move for
23 summary judgment.  ECF No. 47.  Plaintiff opposed the motion, ECF No. 50, and defendants
24 filed a reply, ECF No. 51.
25 **II.**    **Summary Judgment Standard**
26   Summary judgment is appropriate when there is "no genuine dispute as to any material fact
27 and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary
28 judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

3

to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment

should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255;

*Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted); *Celotex*, 477 U.S. at 323 (if the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue). Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

Defendants' motion for summary judgment included a notice to plaintiff informing him of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**III.   Discussion**

To succeed on an Eighth Amendment claim predicated on inadequate medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if

1 he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. It is important to differentiate common law negligence claims of malpractice from claims predicated on violations of the Eight Amendment's prohibition of cruel and unusual punishment. In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976); *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).

Plaintiff argues that defendant LeTourneau was deliberately indifferent because he knew about the chrono before the incident on November 17, forced plaintiff to work in the sun, and even issued rules violation reports against plaintiff on November 9 and November 22, when plaintiff refused to work. ECF No. 50 at 6-7, 10-11, 14-16, Exs. C & E. This evidence, however, does not create a triable dispute as to whether LeTourneau possessed the requisite mental state for an Eighth Amendment violation. The chrono required that plaintiff should have "no prolong[ed] exposure to sun or heat >90 degree[s]." Shadday Decl., Ex. B. Dr. Shadday, the author of the chrono, states that the chrono was not meant to prevent plaintiff from working outside, even in sunny conditions, when the temperature was below 90 degrees. *Id.* ¶ 8. Even Dr. Rallos, who examined plaintiff following his episode of heat exhaustion on November 17, did not interpret the chrono as preventing plaintiff from working outside in November when the temperature was below 90 degrees. Rallos Decl. ¶ 14. Thus, even though LeTourneau knew about the chrono, he reasonably believed that it only limited plaintiff's sun exposure to days where the temperature exceeded 90 degrees. It is undisputed that LeTourneau never required plaintiff to work when the heat exceeded 90 degrees and that he accommodated plaintiff by excusing him from work from July through October. The fact that LeTourneau disciplined plaintiff for refusing to show up for work as ordered does not demonstrate that LeTourneau was deliberately indifferent to plaintiff's serious medical needs.

Plaintiff argues that defendant Silva was deliberately indifferent because he waited until several weeks after November 17 to unassign plaintiff from the yard crew. ECF No. 50 at 16-17.
/////

In the weeks following November 17, however, the temperatures remained well below 90 degrees. ECF No. 47-3, Ex. 5 at 9-16. Plaintiff fails to show how Silva's failure to unassign him during this period of time amounts to deliberate indifference. Plaintiff also claims that when Silva finally unassigned him, he did so not because of plaintiff's medical needs, but as punishment for plaintiff's refusal to go to work, and to deem plaintiff a "program failure" in front of the classification committee. *Id.* at 16-17. As discussed above with respect to LeTourneau, the fact that plaintiff was disciplined for refusing to show up for work does not demonstrate deliberate indifference. Even taking plaintiff's statements as true, they do not demonstrate that Silva was deliberately indifferent to plaintiff's serious medical needs with respect to the November 17, 2010 incident. In fact, there is no evidence that Silva was aware of any risk to plaintiff on this date.

In sum, the undisputed evidence shows that defendants LeTourneau and Silva did not know of or disregard an excessive risk to plaintiff's health or safety.

Accordingly, IT IS HEREBY ORDERED that the October 9, 2013 hearing on defendants' motion for summary judgment is vacated.

Further, IT IS HEREBY RECOMMENDED that defendants' August 19, 2013 motion for summary judgment (ECF No. 47) be granted and the Clerk be directed to enter judgment for defendants and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The

/////
/////
/////
/////

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 8, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE